THE PEOPLE OF THE STATE OF NEW YORK, RESPOND-
ENT, v. CHARLES E. UPTON, APPELLANT.

*Trial of a person accused of crime — all questions of fact should be left to the jury—not more than one separate and distinct crime can be charged in an indictment — Code of Criminal Procedure, sec. 278 — the objection should be taken by a demurrer — Code of Criminal Procedure, sec. 323, sub. 3 — and is waived by a plea of not guilty — Id., secs. 331, 464 — when an indictment is defective in failing to suffi- cintly identify the property taken — the objection is waived if not taken by a demurrer — so as to a failure to set forth the value of the property taken.*

APPEAL from a judgment, entered on a verdict rendered at the Monroe Oyer and Terminer, convicting the defendant of the crime of knowingly overdrawing his bank account, and thereby wrong fully obtaining the money, notes, drafts and funds of such bank, he being at that time its president. He was sentenced to imprisonment in the Monroe County Penitentiary for the period of six months. The indictment contained five counts, in each of which a separate and distinct offense was set forth as having been committed on dif ferent days, in taking money in different sums. In the first count it is charged that the overdrawing was on the 4th day of December, 1882, in the sum of $23,000; in the second, as occurring on the eleventh of December, $7,000; in the third, on the eleventh, in the sum of $30,000; in the fourth, on the eighteenth, in the amount of $18,000; in the fifth, on the nineteenth, in the sum of $23,638.16.

The verdict, as rendered and recorded, is in this form: " The jury find the defendant guilty of the misdemeanor charged in the third count in the indictment; that they find the defendant guilty of the

misdemeanor charged in the fifth count of the indictment, and that they find the defendant not guilty of the charge in the first, second and fourth counts in the indictment."

The City Bank was organized under the State banking laws, and ceased to do business at the close of banking hours on the 19th of December, 1882, being then largely insolvent. The indictment was framed under section 600 of the Penal Code, which went into effect on the 1st day of December, 1882.

The court at General Term, after reviewing the charge by the justice presiding at the trial, and the evidence in the case bearing upon the question as to whether or not the defendant was entitled to have added to the credit appearing in his individual account upon the books of the bank the proceeds arising from the discount of certain notes, indorsed for his accommodation by one Warner, which proceeds would, if credited to his account, have rendered it good at the time he was charged with overdrawing it, said : " By the charge as made, and the refusal to charge as here requested, the jury were prohibited from allowing the defendant a credit in his account for the proceeds of the notes, and were not permitted to pass upon the question as to the arrangement actually made with the other officers of the bank previous to receiving the Warner notes, nor as to the use made of the proceeds at the time they were turned over to the bank. When the trial court assumed to decide the question whether or not the defendant was entitled to a credit for the proceeds of the notes, we think it usurped the province of the jury, and gave a construction to the evidence susceptible of a different interpretation and which it was the exclusive right of the jury to determine. On the trial of a citizen, charged by indictment with a violation of the criminal law, the court cannot instruct the jury, as to the verdict they shall render ; they are the sole judges of the question of his guilt or innocence. It is equally beyond the province of the court to decide as to the truth or falsity on any pertinent question of fact, raised on the trial, which the evidence tends to prove, however strong and convincing it may appear to be to the mind of the court, in support of either side of the question. If there is no real conflict in the evidence there remains the question of credibility of the witnesses upon which the jury must pass.

" In the case now before us, the court determined the fact that the

proceeds of the Warner notes were applied on the defendant's indebtedness to the bank, other than his indebtedness as it appeared on the books of the bank, the day these notes were received and accepted by the bank. The question how the avails of the notes should be applied, depended on the evidence of witnesses called by the prosecution, some of whom must have believed that the defend ant by his miscouduct in management of the affair of the bank had greatly wronged and injured them personally. It is very natural to suppose that they testified with some ill feeling towards the accused. Their evidence on this subject consisted chiefly in a narrative of the oral statements and representations made to them by the defendant, before and at the time the Warner notes were delivered over to the bank for its use.

"It is the true theory and fundamental principle of the common law, in trial of criminal cases, for the court to adjudicate upon all questions of law, and for the jury to adjudicate upon all questions of fact. (*Commonwealth* v. *Anthes*, 5 Gray., 185; *Duffy* v. *The People*, 26 N. Y., 588; *McKenna* v. *The People*, 81 id., 360; *Howell* v. *The People*, 5 Hun, 620; S. C., 69 N. Y., 607.) In *Bushnell's case* (Vaughan, 135) it was very pertinently and forcibly said: ' For if the judge from the evidence shall by his own judgment first resolve upon any trial what the fact is, and so knowing the fact, shall then resolve what the law is and order the jury penally to find accordingly, what either necessary or convenient use can be fancied of juries, or to continue trials by them at all.'

" The citation of authorites no less direct than pertinent might be indefinitely multiplied. This ancient maxim of the common law never diffcult to comprehend or to apply, has recently been made the subject of legislative declaration, and it is now provided in sections 419 and 420 of the Code of Criminal Procedure, that on the trial of an indictment all questions of fact are to be decided by the jury and the court must if requested by the defendant specially 'inform the jury that they are the exclusive judges of all questions of fact.'

"Many of the other rulings made on the trial were excepted to and argued on this appeal, but we do not deem it necessary to con- sider any of them except those which bring up questions bearing upon the form and sufficiency of the indictment.

" It was claimed that it was error to require the defendant to go to trial on the separate counts, and permitting a verdict of conviction to be rendered on more than one of them, as it is not permissible to charge more than one separate and distinct crime in the indictment.

" We think the defendant waived the objection now made by appearing and entering a plea of not guilty. This plea was made on the 12th of June, 1883, the day on which the defendant was arraigned in the Oyer and Terminer. On the ninth of July, the day the trial began, upon the defendant's own affidavit and those of his counsel seeking to excuse the omission on their part in not demurring to the indictment, on the ground that more than one offense was charged therein, the defendant asked the leave of the court to withdraw his plea of not guilty and for permission to interpose a demurrer, which application was denied. It was within the discretion of the trial court to grant or withhold that favor, and after judgment on a verdict of conviction this court has no power to review this exercise of discretion vested in the Oyer and Terminer. The indictment was subject to the objection that it charged more than one offense, in violation of the prohibition contained in section 278, and for that reason was demurrable. (Sub. 3, § 323.) The objection of misjoinder can only be taken by demurrer and cannot be raised on the trial or on a motion in arrest of judgment. (Secs. 331, 464.) The provisions on this subject are imperative and cannot be disregarded by the court. Prior to the Code the joinder of several distinct misdemeanors in one indictment was not a cause for a reversal of a judgment when the sentence was single and was appropriate to either of the counts upon which the conviction was had. (*People* v. *Liscomb*, 60 N. Y., 559; *Polinski* v. *The People*, 73 id., 65.)

" The judgment pronounced on the conviction in this case was no greater than could have been given by the court for one offense. (Penal Code, § 15.) By omitting to object to the misjoinder at the time and in the manner provided by the statute, the defendant must be regarded as consenting to be put upon his trial for the several offenses charged in the indictment, and to have the question of his guilt on all the counts disposed of on one trial and by one jury. We cannot see how the defendant has been prejudiced or

how he can be, on another trial, by investigating the several charges together.

" An objection is made, also, to the sufficiency of the indictment, because of its uncertainty arising from the alleged insufficiency in the description of the property obtained from the bank by means of the overdraft, as charged in the several counts. The property is described therein as ' the money, notes, drafts and funds of the bank,' and the identity of the things taken is not aided by any other description contained in the indictment. The offense, as defined by the statute, is predicated upon an overdraft whereby an officer of a bank wrongfully obtains ' the money, notes or funds of the bank.' We are of the opinion that, in this particular, the indictment would be adjudged bad if tested by the common-law rule of pleading as it existed prior to the adoption of the Criminal Code. We are also of the opinion that, tested by the statutory rule as it now exists, it would be adjudged bad if timely objections had been interposed by demurrer. In the system of procedure, now in force in criminal cases, all technical questions and formal defects appearing upon the face of the indictment must be taken by demurrer and cannot be raised on the trial, or on a motion in arrest of judgment, and the only questions which can be presented after conviction are for a cause affecting the jurisdiction of the court or that the facts stated do not constitute a crime. (Code of Criminal Procedure, secs. 323, 331.) In each of the counts the facts stated do constitute a crime. The objection now under consideration relates to the sufficiency of the description of the personal property charged to have been appropriated by the defendant to his own use. The charge is positive that the defendant did obtain money, notes, drafts and funds belonging to the bank.

" In this State demurrers in criminal cases have seldom occurred, because prior to the Code the defendant might have taken advantage of the defects on the trial, or on a motion in arrest of judgment, with the same effect as he could upon a demurrer. The manifest purpose of the statute was to require formal objections to be taken before putting the people to the expense of a trial on the facts, and not to embarrass or take away from the defendant the right to obtain the opinion of the court upon the sufficiency of the indictment, but requiring him to present the questions intended to be presented by demurrer.

"In Massachusetts the same rule of practice prevails, based upon a statute which provides that objections to an indictment for formal defects, apparent upon its face, shall be taken by demurrer, or on motion to quash before trial, and not by motion in arrest of judgment, unless for a cause affecting the jurisdiction of the court. (Mass. Stat. of 1864, chap. 250, secs. 2 and 3.) Under this statute it has been held that an indictment for larceny cannot be objected to for informality in the description of the goods stolen after the trial commenced. (*Commonwealth* v. *O'Connell*, 12 Allen, 451.) In that case it was charged that the defendant, on a day and at a place named, did steal and carry away ' a quantity of bank bills, current within this Commonwealth, amounting together to one hundred and fifty dollars, and of the value of one hundred and fifty dollars.' And it was held that, as the objection was not raised before the jury were impanneled, the defendant was not entitled to the benefit of any formal or technical defect in the mode of the allegation or description of the property.

" Under the same statute it has been held that an indictment for stealing goods, which does not aver that they were taken and carried away, is a formal defect only, and cannot first be raised on a motion in arrest of judgment. (*Green* v. *Commonwealth*, 111 Mass., 417; see, also, as bearing on the same subject, *Commonwealth* v. *Legassy*, 113 id., 10; *Commonwealth* v. *McGovern*, 10 Allen, 193.)

" The indictment here does not set forth the value of the property acquired by the defendant by means of the overdraft. Such an averment is necessary to constitute a perfect pleading, and is usually inserted in indictments charging offenses of this character. The omission to make the proper averment may be taken advantage of by the defendant at the time and in the manner provided by the statute. The neglect to do so constitutes a waiver under the present system of procedure. The defect thus pointed out, is, as we think, of a formal character, as the statutory offense is not made to depend on the value of the money, notes or funds, wrongfully acquired by the defendant by means of the overdraft; nor does the degree of punishment imposed by the statute depend upon the extent of loss suffered by the bank. The act charged in the indictment constitutes a crime, and is stated with sufficient certainty so as to enable the court to pronounce judgment upon a conviction, according to the

right of the case, and it should therefore be maintained. (Sec. 284, sub. 7, Code of Crim. Pro.)

" The judgment and conclusion reversed, new trial awarded upon the indictment, and the proceedings are remitted to the Oyer and Terminer of Monroe county, with directions to proceed thereon according to law."

*M. W. Cooke* and *Raines Brothers,* for the appellant.

*William F. Cogswell,* for the People.

Opinion by BARKER, J.; SMITH, P. J., HAIGHT and BRADLEY, JJ., concurred.

Judgment and conviction reversed and new trial ordered and proceedings remitted to the Court of Oyer and Terminer of Monroe county, with directions to proceed thereon.